Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1503 | **DATE** | 6/10/2002 |
| **CASE TITLE** | Warnell, et al. vs. Ford Motor Co. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order denying plaintiffs' motion (80-1) to stop settlement agreement/claims process. Class counsel are ordered to disgorge all contingent fees collected from the named plaintiffs and to file proof of repayment, with interest at the prime rate as of today, no later than 7/1/02. A copy of this opinion will be sent to the Illinois Attorney Registration and Disciplinary Committee and the New York State Bar Association's Committee on Professional Discipline.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

| MPJ | courtroom deputy's initials |
|---|---|

Date/time received in central Clerk's Office

| | |
|---|---|
| 15 | number of notices |
| JUN 11 2002 | date docketed |
| CDY | docketing deputy initials |
| 6/10/2002 | date mailed notice |
| MPJ | mailing deputy initials |

Document Number

179

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUN 11 2002

| | | |
|---|---|---|
| **ROSALIND WARNELL, SUZETTE WRIGHT, MADONNA HOWARTH, CYNTHIA SMITH, BERYL PARKER, SHARON DUNN, VERA BOYLAND and LATANJA MANSON,** each individually and on behalf of other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>**FORD MOTOR COMPANY,**<br><br>Defendant | ) | No. 98 C 1503 |
| **ALTHEA RAPIER, JODI FARRIS, RHONDA EVANS, GWANJUANA GRAY, VICTORIA WILLIAMS and DEANNE HARRIGAN,** individually and as class representatives<br><br>v.<br><br>**FORD MOTOR COMPANY,**<br><br>Defendant | ) | No. 98 C 5287 |

**MEMORANDUM OPINION AND ORDER**

I here resolve a dispute between the named plaintiffs in these two class actions and their counsel about the enforcement of contingent fee agreements. Attorneys have fiduciary duties to their clients, not least when they represent a class of plaintiffs. They also have an obligation, as officers of the court, to disclose any potential conflicts of interest with their clients when they seek an award of attorneys' fees out of the proceeds of a class

179

settlement. I find that, at a minimum, the attorneys for the plaintiffs in this case violated the latter duty by failing to disclose their intent to enforce contingent fee agreements against the named plaintiffs' recovery from the settlement fund.

I.

I preliminarily approved settlement of these Title VII sex discrimination class actions[1] on August 25, 2000. The settlement provided for a $12 million fund, $9 million of which was solely for the benefit of the class, and $3 million of which could be used for attorneys' fees. Any unused portion of the $9 million would be used for the benefit of the class, and any unused portion of the $3 million would revert back to Ford. No objections to the settlement agreement or the fee application were filed, and at the fairness hearing on November 17, 2000, I granted class counsel's petition for fees in the amount of $2.75 million.

Of the $9 million dedicated solely to the benefit of the class, only $4,946,000 has actually been distributed directly to class members: $3,050,000 to the named plaintiffs pursuant to ¶ 12 of the settlement agreement, and $1,986,000 to class members who filed claims in the claims process. The remaining $4,054,000 in the

[1] These two class actions were consolidated. The plaintiffs in the *Warnell* action were represented by Keith L. Hunt and Katherine Rodosky of Hunt & Associates, and by Edward R. Vrydolyak. The plaintiffs in the *Rapier* action were represented by Daniel L. Berger and Darnley D. Stewart of Berstein Litowitz Berger & Grossman, and by Vanessa L. Smith.

residual fund will be used to fund a scholarship program and a job training program for members of the class who are still employed by Ford; this excludes all but two[2] of the named plaintiffs.

On January 18, 2002, eleven of the named plaintiffs filed a "motion to stop settlement agreement/claims process," complaining of unfair results of the claims process and raising a number of other grievances related to the administration of the settlement. I held a hearing on the motion on January 25, 2002, and the named plaintiffs stated that their attorneys had forced them to resign as a condition of settlement. Of the class counsel, only Keith Hunt, counsel to the *Warnell* plaintiffs, received sufficient notice of the motion to appear at the hearing. In the course of the hearing it came to my attention that class counsel had enforced contingent fee agreements with the named plaintiffs, although no intent to do so had ever been disclosed to me prior to my approval of the settlement. Counsel had collected a total of $635,000 in contingent fees,[3] above and beyond what I had awarded under the settlement. I

---

[2] Victoria Williams chose not to resign her position. Gwajuana Gray initially agreed to resign, but changed her mind and decided to stay on medical leave until 2006 and delay the decision whether to resign. Although it has been resolved that she need not resign to accept her $175,000 guaranteed award, she has not yet, to my knowledge, signed the settlement agreement and release for that amount. She has, however, signed a release for the additional $25,000 that she was awarded during the claims process. *See* Transcript of 2/25/02 Hearing at 32-35.

[3] The individual named plaintiffs paid between $35,000 and $75,000 under the contingent fee agreements.

ordered class counsel to respond to these allegations.

Keith Hunt and Darnley Stewart filed affidavits in which they admit that they failed to disclose their intent to enforce the contingent fee agreements, *see* Hunt Aff. ¶ 3, Stewart Aff. ¶ 14, and they also admitted at a hearing on February 25, 2002, that they did not disclose their intent to enforce them. Transcript of 2/25/02 Hearing at 5, 7. They argue that the failure was innocent, and was not intended to deceive. I find otherwise.

Counsel argue that they disclosed the existence of the fee agreements to me, although they admittedly did not explicitly disclose their intent to enforce them. The memorandum in support of the application for attorneys' fees mentioned contingency agreements three times: twice to emphasize the contingent nature of the representation in order to demonstrate the risk borne by counsel, Fee Mem. at 7, 15-16, and once to compare average awards in private contingent litigation (30%-40%, plaintiffs had agreed to 33⅓%-40%) to what counsel was asking for here, Fee Mem. at 9. However, in the application for attorneys fees, counsel said that "[t]he attorneys['] fees will *not* be paid out of the Settlement Fund. Instead, the fees will be paid by Ford separately, and the amount of fees will not affect the monetary awards to members of the Class or Class representatives. Ford has agreed to pay $9 million to the class, and a separate $3 million in fees and expenses." Fee Mem. at 2 (emphasis in original); *see also* Fee Mem.

at 11 (stating that all $9 million of the Settlement Fund "will go to Class members, and to no one else."). The settlement agreement itself says that the $3 million portion of fund is "for *all* services, expenses and administrative and other costs incurred to date of this Settlement Agreement and for *all* services, expenses and administrative and other costs which are reasonably necessary to Class Counsel's role in implementing this Settlement agreement . . . ." ¶ 20 (emphases added).

No reasonable reading of these statements leads to the conclusion that counsel intended to enforce their rights to contingent fees out of the named plaintiffs' recovery from the $9 million portion of the fund, in addition to the attorneys' fees awarded out of the $3 million portion of the fund. Counsel argue that they viewed the fee petition as only relating to their efforts on behalf of the class and not the named plaintiffs, Hunt Aff. ¶ 16, 36; Stewart Aff. ¶ 14, but this distinction is disingenuous; the settlement agreement sets aside $9 million for the class, *from which named plaintiffs received their awards*, ¶ 12, and a separate $3 million for *all* attorneys' fees. "All" means "all," not "some" or "part." *See Knott v. McDonald's Corp.*, 147 F.3d 1065, 1067 (9th Cir. 1998). I reject the assertion that the failure to disclose the intent to enforce the contingent fee agreements was innocent. The evidence is that it was intentionally deceptive, and I so find.

II.

What remains to be resolved is the remedy for non-disclosure. Counsel argue that the fee agreements are enforceable on top of the fee award, and argue that I need only consider whether the total fee--the $2.75 million award plus the contingent fees--was reasonable. The only authority they cite for the proposition that the contingent fee agreements are enforceable is *Venegas v. Mitchell*, 495 U.S. 82 (1990), which held that an attorney who recovers attorneys' fees under the fee-shifting provision of 42 U.S.C. § 1988 may still enforce rights to a share of the plaintiff's recovery under a contingent fee agreement. *Id.* at 87-88. Counsel's reliance on *Venegas* is misplaced; *Venegas* involved an individual award after a judgment, not a common fund after a class action settlement, and the Seventh Circuit has specifically held that the principles governing attorneys' fees under fee-shifting statutes are different than those that govern the award of attorneys' fees from a common fund in a class action settlement. *See Skelton v. General Motors Corp.*, 860 F.2d 250, 252, 255 (7th Cir. 1989).[4] *See also Alexander v. Chicago Park Dist.*, 927 F.2d 1014, 1025 (7th Cir. 1991) ("[T]he case law regarding statutory fees under 42 U.S.C. § 1988 is largely irrelevant" in common fund cases.).

The reason for the difference is this: a fee award under a

[4] Moreover, the Supreme Court in *Venegas* was not confronted with the issue before me: the consequences of non-disclosure of the contingent fee agreement in the application for attorneys' fees.

fee-shifting statute is paid to the attorney directly by the defendant and is independent of the plaintiff's recovery. *Id.* at 252. *See also Venegas*, 495 U.S. at 90 ("In sum, § 1988 controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer."). In settlements that result in a common fund for the benefit of a class, however, the attorney's award comes out of the plaintiffs' recovery, and "[s]imilar to the way a plaintiff's attorney may be compensated by a contingent fee, a plaintiff class pays its attorneys by sharing its recovery with them." *Id.* Fees awarded out of a common fund are a substitute for, not a supplement to, a contingent fee.

Because a statutory fee award is separate from the plaintiff's recovery, there is no conflict of interest between the individual plaintiff and her counsel. *Id.* at 253. In a common fund case, however,

> once the attorneys secure a settlement for the class, they petition the court for compensation from the same fund. Thus "their role changes from one of a fiduciary for the clients to that of a claimant against the fund created for the clients' benefit." The court becomes the fiduciary and must carefully monitor disbursement to the attorneys by scrutinizing the fee applications.

*Id.* *See also Alexander*, 927 F.2d at 1023 ("The district court was required under Fed. R. Civ. P. 23(e) to scrutinize any fee agreements that would be enforced as part of the settlement, because those agreements necessarily put counsel and clients in an adversary relationship.").

Here the settlement fund was $12 million, $9 million of which was solely for the benefit of the class, and $3 million of which could be used for attorneys' fees. Any unused portion of the $3 million would revert to Ford, not the class. Under this structure, a single award of fees from the $3 million eliminated any potential conflict of interest between class counsel and the class, because the plaintiffs' awards were not to be reduced by the attorneys' fees. *See* Fee Mem. at 2. The contingent fees collected by counsel, however, *did* come out of the named plaintiffs' recovery from the $9 million. Counsel's failure to disclose their intent to enforce the contingent fee agreements in this manner circumvented my role as a fiduciary for the class. The failure to disclose under these circumstances "renders the agreements unenforceable." *Alexander*, 927 F.2d at 1024. *See also Pete v. United Mine Workers of Am. Welfare & Retirement Fund of 1950*, 517 F.2d 1275, 1291 (D.C. Cir. 1975) (holding that clients' lack of sophistication and excessive amount of contingent fee agreement, "plus the fact that class counsel had solicited the fee agreement without court approval and after entry of summary judgment for the class," rendered agreements unenforceable).

In *Alexander*, not cited to me by counsel, class counsel obtained a $500,000 common fund settlement. 927 F.2d at 1016. Although class counsel in that case did not petition for attorneys' fees, and represented to his clients that he was not seeking

attorneys' fees, he petitioned for $350,000 in costs. *Id.* For a variety of reasons, the district court rejected this request, and instead awarded approximately $130,000. *Id.* at 1018-19. *See also Alexander v. Chicago Park District*, No. 79 C 2242, 1989 WL 121288, at *1 (N.D. Ill. Oct. 4, 1989) (Rovner, J.). In administering the settlement, counsel informed the class members that he was enforcing contingent fee agreements (some of which had actually been entered into *after* the settlement), and took $350,000 plus interest out of the fund before distributing it to the class. 927 F.2d at 1021. Several class members complained to the district court.[5] *Id.* The Seventh Circuit called counsel's claim to an entitlement to contingent fees "preposterous," *id.* at 1023, and held that "a cryptic reference to contingent fees in the . . . settlement agreement was not sufficient" to disclose counsel's interest in a share of the class' recovery. The court held that counsel had waived statutory fees under § 1988 by entering into the settlement agreement and petitioning for costs, and that the failure to disclose the contingent fee agreements rendered them unenforceable. *Id.* at 1024-25.

The principles of waiver are equally applicable here.

---

[5] The Seventh Circuit noted that jurisdiction over the contingent fee dispute was based on the settlement agreement itself, which reserved jurisdiction in the district court to enforce the settlement. *Alexander*, 927 F.2d at 1022-23. A similar provision of the settlement agreement in this case provides jurisdiction over the fee dispute here. *See* Settlement Agreement ¶ 22.

Counsel's passing reference to the contingent nature of their representation to demonstrate the risk involved in the case and the overall reasonableness of the $2.75 million award sought, not only was insufficient to disclose their intent to enforce the fee agreements, but actually concealed the intent. The enforcement of the fee agreements directly contradicts the settlement agreement that I approved, which stated that attorneys' fees would not be paid out of the $9 million fund. Although the contingent fee agreements here only affected the recovery of the named plaintiffs, as opposed to the whole class, as in *Alexander*, *see* 1989 WL 121288, at *4, they created a conflict of interest with regard to the named plaintiffs that was undisclosed at the time of the settlement approval and fee award. The contingent fee agreements are unenforceable, *see Alexander*, 927 F.2d at 1024, and counsel must return to the named plaintiffs all contingent fees collected.

Counsel argue that I need only consider whether the total fees collected were reasonable, but they offer no authority in support of this procedure. By waiting to disclose the existence of the contingent fee agreements until the named plaintiffs complained, more than one year after I had approved the settlement and the award of fees, counsel waived the argument that the total fees, including the contingent fees, were reasonable. Disgorgement of the contingent fees in *Alexander* was a sanction for non-disclosure, not an after-the-fact assessment of the overall reasonableness of the

fees. *See* 927 F.2d at 1023 ("Judge Rovner was correct to reprimand [counsel] for his deceptive and unprofessional performance."); *id.* at 1024 (holding that counsel's deception, in combination with the requirement that district court approve contingent fee agreements with class members, rendered agreements unenforceable).

The district court in Alexander noted that "[i]f the Court had ever believed that the fee agreement entitled [the attorney] to deduct additional expenses, it would not have awarded him expenses at all and probably would not have approved the settlement agreement in light of the small percentage of the fund which would remain for the class members." 1989 WL 121288, at *5. I would not have approved the settlement or the award of fees here had I known that counsel intended to enforce the contingent fee agreements. It would have been within my discretion to insist, before approving the fee award, that counsel relinquish the right to enforce any fee agreements with the named plaintiffs, had I known that they planned to, *see In re Agent Orange Prod. Liability Litig.*, 818 F.2d 226, 240 (2d Cir. 1987) (holding that district court properly "requir[ed] counsel, prior to receiving fees from the settlement, to certify that he or it had retained no fees or expenses from any class members"), and I would have done so.

Counsel's initial award in this case was substantial. Before I certified the class, there was already an EEOC agreement that provided a fund of up to $7.5 million. Class counsel negotiated an

increase of $1.5 million and a guarantee that the residual fund would be used for the benefit of the class rather than revert back to Ford, as well as an extended claims period and monitoring. Counsel also negotiated the right of the named plaintiffs to participate in the claims process and to receive a guaranteed minimum payment and a resignation or retirement bonus. At the fairness hearing I expressed some skepticism that the value added to the EEOC agreement was really worth the $2.75 million in fees that counsel sought, but I granted the fee petition in the absence of objections from the class. *See* Transcript of 11/17/00 Fairness Hearing at 3-4. The $2.75 million award represented approximately twenty-three percent of the total $12 million fund. This was a generous award in light of the groundwork for the settlement laid by the EEOC before the involvement of class counsel.

The improper collection of contingent fees increased the total award to more than $3.4 million, or approximately twenty-nine percent of the $12 million fund.[6] The impact on the awards of the individual named plaintiffs, however, is much more severe, because the contingent fees came entirely from their awards. Counsel object to the characterization of their enforcement of the contingent fee agreements as "double-dipping," arguing that the $3 million set aside for attorneys' fees would not have gone to the class or the

[6] This was a nearly twenty-five percent increase from the $2.75 million originally awarded.

named plaintiffs in any event. But that is simply because the percentage of the award that Ford was willing to see go to attorneys' fees was predetermined when the settlement came to me. It is impossible to speculate now what Ford would have agreed to pay the named plaintiffs had it known that the plaintiffs would have to bear the cost of paying their attorneys' fees out of their awards. Nonetheless, if the set-off for attorneys' fees is treated as, at least theoretically, reducing the cash awards to the named plaintiffs, the named plaintiffs had already paid twenty-three percent as part of the $2.75 million award.

If the $3,050,000 paid to the named plaintiffs represents seventy-seven percent of what they would have received before attorneys' fees, the total cash payments before attorneys fees would have been approximately $3,961,000. That means that counsel already effectively received $911,000 in attorneys' fees from the named plaintiffs. Increasing that by $685,000 for the contingent fees collected produces a total award of $1,596,000, or forty percent of the total that the named plaintiffs might have recovered, as opposed to twenty-three percent paid by the rest of the class. Because nearly all of the named plaintiffs are no longer employed by Ford, they cannot share in the benefits that may flow to other class members from the programs funded by the residual $4,054,000. This is all by way of saying that I would never have approved a settlement that required the named plaintiffs to

shoulder the burden of their attorneys' fees to a significantly greater extent than the rest of the class where the class got a significantly greater benefit. The total fees collected are thus unreasonable. Nonetheless, the critical issue is that the failure to disclose the intent to enforce the fee agreements was "deceptive and unprofessional," *Alexander*, 927 F.2d at 1023, and counsel may not profit from this behavior.

III.

The named plaintiffs raise a number of other complaints that cannot be remedied here. They claim that their attorneys forced them to resign their positions at Ford, rather than telling them that they had the option not to resign. The settlement agreement provided an additional guaranteed distribution from the settlement fund for the named plaintiffs if they resigned. ¶ 12. The settlement agreement presented this as an "opportunity," but the named plaintiffs say that their lawyers told them they had no choice. None of the named plaintiffs filed an objection to this portion of the settlement agreement. At the January 25 hearing, Mr. Hunt stated that, although the settlement agreement proposed resignation as an option, Ford would not settle unless all of the named plaintiffs resigned or retired. *See* Transcript of 1/25/02 Hearing at 19, 28, 66. However, the settlement agreement made resignation optional and counsel for Ford, present at the January 25 hearing, confirmed that resignation was not an absolute

condition of settlement. *Id.* at 68. If class counsel actually told the named plaintiffs that they had no option but to resign, the named plaintiffs may have a cause of action for malpractice or even fraud against their attorneys, but my jurisdiction here is limited to enforcement of the agreement, Settlement Agreement ¶ 22, which states that resignation was optional. The named plaintiffs will have to sue separately if they wish to seek recovery for misrepresentations that led to loss of employment.[7]

The named plaintiffs also expressed displeasure with the size of the awards that they received in the claims process, above and beyond the $175,000 guaranteed by ¶ 12 of the settlement agreement. The settlement agreement does not provide for any review of individual awards, so I may not review the substance of the individual claims. The named plaintiffs also ask me to order that the residual fund--*i.e.*, the more than $4 million that remains of the original $9 million fund after payments to the named plaintiffs and the class members--be used for the benefit of the named plaintiffs. However, the settlement agreement specifically provides

---

[7] Likewise, Ms. Gray seeks interest on the $175,000 to which she was entitled under the settlement agreement, but which was withheld because she had not signed the settlement agreement. She stated that she did not sign the settlement agreement and release for her check because she was told by counsel that she had to resign to receive the money and did not want to do so. *See* Transcript of 1/25/02 Hearing at 42-53. The settlement agreement does not provide for any interest, so any claim for interest due to counsel's alleged misinformation or interference cannot be resolved here.

for the use of any residual funds to benefit the members of the class who are still employed by Ford. ¶ 15. The named plaintiffs raised no objection to this provision before I approved the settlement, and I cannot alter the bargain that they struck, no matter how unhappy they are with it now.

IV.

The motion to stop the settlement agreement/claims process is DENIED. Class counsel are ORDERED to disgorge all contingent fees collected from the named plaintiffs and to file proof of repayment, with interest at the prime rate as of today, no later than July 1, 2002. A copy of this opinion will be sent to the Illinois Attorney Registration and Disciplinary Committee and the New York State Bar Association's Committee on Professional Discipline.

**ENTER ORDER:**

Elaine E. Bucklo

**Elaine E. Bucklo**
United States District Judge

Dated: June 10, 2002